THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT FAHEY,<br><br>    **Plaintiff**<br><br>vs.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    **Defendant** | 3:13-CV-02175<br><br>(Judge MARIANI) |

### MEMORANDUM

### Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Robert Fahey's claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Fahey met the insured status requirements of the Social Security Act through at least December 31, 2012. Tr. 20, 22 and 103.[1] In order to establish entitlement to disability insurance benefits Fahey must establish a disability on or before the date last insured. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on November 14, 2013.

On February 2, 2010, Fahey protectively[2] filed an application for disability insurance benefits. Tr. 20, 51 and 118. After his claim was denied initially, a hearing was held on June 9, 2011, before an administrative law judge. Tr. 28-50. On October 18, 2011, the administrative law judge issued a decision denying Fahey's application for benefits. Tr. 20-24. As will be explained in more detail *infra* the administrative law judge denied benefits at step 1 of the sequential evaluation process based on a finding that Fahey had engaged in substantial gainful activity since his alleged disability onset date of November 27, 2009, and up to the time of the administrative hearing. Tr. 22. On November 22, 2011, Fahey filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 11-16. On June 21, 2013, the Appeals Council concluded that there was no basis upon which to grant Fahey's request for review. Tr. 1-6. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Fahey then filed a complaint in this court on August 16, 2013. Supporting and opposing briefs were submitted and the appeal[3] became ripe for disposition on April 10, 2014, when Fahey filed a reply brief.

---

2. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Fahey, who was born on October 14, 1961, claims that he became disabled on November 27, 2009, because of heptatis C, high blood pressure, back problems, sleep apnea, narcolepsy and wrist problems. Tr. 144.

Fahey received a General Equivalency Diploma (GED) in 1990 and can read, write, speak, and understand the English language and perform basic mathematical functions such as paying bills, counting change, handling a savings account and using a checkbook and money orders. Tr. 143 and 160. During his primary and secondary schooling, Fahey attended regular education classes. Tr. 145. In 1983 Fahey completed vocational training to become a commercial truck driver. Id.

Fahey's work history covers 32 years and at least 9 different employers. Tr. 112-114 and 146. The records of the Social Security Administration reveal that Fahey had earnings in the years 1976, 1978 through 2005 and 2008 through 2009. Tr. 104. Fahey's annual earnings range from a low of $118.19 in 1979 to a high of $31,477.00 in 2004. Id. Fahey's total earnings during those 32 years were $431,196.20. Id.

At the time of the alleged disability onset date, he was the co-owner and operator with his wife of Fahey's Riverfront Café, LLC, a neighborhood type tavern located in Pittston, Pennsylvania, consisting of space for 15 bar stools and allowing for a maximum occupancy of 49 patrons. Tr. 120. The establishment sells alcoholic beverages and also offers limited food items to compliment its beverage sales. Id. Fahey testified that he was the manager of the bar. Tr. 37. Tax records reveal that Fahey received no personal income from the operation of the bar and the bar operated at a loss of $8447.00 in 2010. Tr. Fahey also had a long history of working as a commercial truck driver and on the alleged disability onset date had ceased working as a dump truck driver for an excavating company because of his medical condition. Tr. 145-

146. A vocational expert indicated that Fahey's past relevant employment[4] was as a truck driver which the vocational expert described as semiskilled, medium work as generally performed in the economy but heavy work as actually performed by Fahey. Tr. 48-49.

Although Fahey claimed that he has been disabled and unable to work full-time since November 27, 2009, the record reveals that Fahey applied for and received unemployment compensation benefits during the 4th quarter of 2009 in the amount of $3185.00 and the 1st, 2nd, 3rd and 4th quarters of 2010 in the amounts of $5110.00, $1570.00, $7295.00 and $4030.00, respectively.[5] Tr. 110-111.

Fahey's argues, inter alia, that the administrative law judge erred in denying benefits at step 1 of the sequential evaluation process. For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial

---

4. Past relevant employment in the present case means work performed by Fahey during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

5. An individual can only collect unemployment compensation if the individual is able and willing to accept work. 43 P.S. §801(d)(1). Although receipt of workers' compensation benefits does not preclude an award of DIB, an ALJ may consider receipt of such benefits when judging a claimant's credibility.

4

evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488

(1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence,

whether a claimant (1) is engaging in substantial gainful activity,[6] (2) has an impairment that is severe or a combination of impairments that is severe,[7] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[8] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[9]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.

---

6. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

7. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

8. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

9. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## Discussion

Fahey raised three arguments only one which has any merit. The court will briefly comment on the first two arguments. The first argument is that the administrative law judge orally decided at the administrative hearing to award Fahey benefits if Fahey submitted a statement from his physician indicating that he commenced Interferon treatments for his hepatitis C. Fahey argues that res judicata prevented the administrative law judge from subsequently issuing a decision denying benefits at step one of the sequential evaluation process. Although the transcript of the hearing reveals that the administrative law judge made such a statement, it did not amount to a final decision which prevented the administrative law judge from reassessing the facts of the case and deciding to deny benefits at step one.[10] The regulations provide that when a fully favorable oral decision is made at the time of the hearing certain matters have to be addressed. Specifically, the administrative law judge has to "include in the record a document that set forth the key data, findings of fact, and narrative rational for the

---

10. In addition, the regulation provides that oral decisions can only be made "in those categories of cases that [the Social Security Administration] identif[ies] in advance." 20 C.F.R. § 404.953(b). Fahey has not argued that this case is in one of those categories.

decision." 20 C.F.R. § 404.953(b). In essence the administrative law judge was required to orally on the record proceed through the 5-step sequential evaluation process. Id. Furthermore, the administrative law judge indicated that he would "recommend disability" which is different from making a final decision on the merits. Tr. 46; 20 C.F.R. § 404.953(c)[11].

Fahey's second argument is that the administrative law judge denied Fahey due process by not giving him an opportunity to address the issue of substantial gainful activity. This argument is devoid of any merit whatsoever. At the administrative hearing Fahey testified he serves as the manager of the bar, tells everyone what to do, and makes the decisions. Tr. 23 and 37. Fahey testified that he does the "hiring and firing." Tr. 39. Fahey testified that he checks on the bar every day in the late morning or at least early afternoon; he opens the bar at about 5:00 or 6:00 p.m.; when necessary he travels to a liquor store to replenish the supply of liquor; he orders the beer and makes sure it is delivered; he at times carries cases of beer from the cellar to the bar; he typically closes the bar between 11:00 p.m. and 12:00 a.m. Monday through Thursday and when the bar is opened on Fridays and Saturdays it typically stays open until 2:00 a.m.; and despite having a bartender who lives in the apartment above the bar and who has a key Fahey closes the business. Tr. 38-40. Fahey further testified that he handles the money for the bar, including the banking, but generally operates on a cash basis because he "doesn't like checkbooks." Tr. 41. Fahey testified that he only works 10 hours per weeks but his overall testimony reveals that he performed work for the bar more than 10 hours a week.

---

11. Section 404.953(c) states as follows: "Recommended decision. Although an administrative law judge will usually make a decision, the administrative law judge may send the case to the Appeals Council with a recommended decision based on a preponderance of the evidence when appropriate. The administrative law judge will mail a copy of the recommended decision to the parties at their last known address and send the recommended decision to the Appeals Council."

9

At one point he stated that he will sit at the bar 2 hours per day which does not include the numerous activities mentioned above. Id.

Fahey, post-hearing, was given an opportunity to submit documentation regarding his involvement with the bar. In fact, he submitted a brief addressing the issue as well as tax returns for 2010. Tr. 119-122. In that brief Fahey contradicted some of his testimony presented at the administrative hearing. Specifically he contradicted the statement that he manages the bar and makes the decisions. He stated in pertinent part as follows:

> 4. Submitted with this letter brief are copies of the [2010] tax returns of the LLC which document[] that the LLC has total income of $24,958.00 and after deductions has a net loss of $8447.00.
>
> 5. The tax return documents that no wages are paid by the LLC or compensation paid to the officers.
>
> 6. There are rental payments by the LLC to another limited liability company which owns the real estate and for which the claimant is also a co-member of that LLC known as Fahey Holding Company LLC, the owner of the building housing the tavern.
>
> 7. The rental income to the holding company is sufficient to pay real estate property taxes on the premises as well as other expenses including heating, and related utility services.
>
> 8. There is no distribution of income by that LLC to the Claimant either.
>
> 9. Work at the Riverfront Café is performed by Maria Fahey who performs cooking, bar services and over sees the overall function of the bar. The Claimant's adult daughter, Alexandra Fahey, serves as a bar tender and bar maid as well. The hours of operation are 6:00 p.m. to midnight or earlier if no patrons are there.
>
> 10. There are three (3) persons who provide bar tender services in return for tips and a percentage of total cost of beverages sold as remuneration for their services.
>
> \* \* \* \* \* \* \* \* \* \* \*
>
> 13. The scope of activity by the Claimant as testified at hearing is limited to opening the Café for business prior to 6:00 p.m., leaves shortly after placing cash in the register and a check of the premises

> and on evenings when the Café closes with only a female bar tender on premises, he will return and close the building and assure that there is a safe exit for the bartender.
>
> 14. If a male bartender is on the premises at the time it closes then the male bartenders have keys to close the facilities and it is not necessary for Claimant to return.
>
> 15. After opening the premises, Claimant depending on his level of energy will sometimes remain on the premises for a short period to greet customers, to check the inventory of beverages and to order beverages as required so that the bar stock is complete.
>
> 16. The Claimant does not remain on the premises during the entire evening of operation and will on occasion return to the bar for a brief interval without precise schedule simply to establish a presence.

Tr. 120-122. Form 1120S, U.S. Income Tax Return for an S Corporation, filed by Fahey's Riverfront Café, LLC, reveals that the bar's gross receipts were $58,885.00; the cost of goods sold was $33,927.00; the gross profit was $24,958.00; and the total deductions were $33,405.00 resulting in a loss of $8447.00. Tr. 132. The deductions were for repairs and maintenance, rents, taxes and licenses, advertising and a category designated "other." Id. The total for that "other" category was $18,436.00 and on the tax form it was noted that a statement was attached. Id. That statement was not included along with the brief submitted to the administrative law judge and our review of the administrative record did not reveal that it was included therein.[12] The Faheys filed a joint income tax return (Form 1040) for 2010. Tr. 125. Mrs. Fahey had wages from the Social Security Administration in the total amount of $31,690.04; Mr. Fahey received $18,335.00 in unemployment compensation; and after deducting a total business loss of $14,048.00 they had adjusted gross income of $35,982.00. Id. The business loss

---

12. The court suspects that the "other" category may include payments for bartender services based on "a percentage of total costs of beverages." Tr. 121.

11

included the loss from the bar as well as passive loss in the amount of $5601.00 from Fahey's Holding Company, LLC, which owned the property in which the bar was operated. Tr. 128.

At the hearing the administrative law judge questioned Fahey about his ownership of and involvement with the bar and was put on notice post-hearing that the administrative law judge had a question about whether or not Fahey had engaged in substantial gainful activity. Tr. 13. Under the circumstances the administrative law judge gave Fahey a sufficient opportunity to address the issue of substantial gainful activity and did not deny him due process of law.

In this case the administrative law judge found that Fahey was not disabled at the first step of the sequential evaluation process, i.e., he was performing substantial gainful work activity. Substantial gainful work activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The Social Security regulations provide guidelines for determining whether a self-employed person, such as Fahey, is engaging in substantial gainful work activity. 20 C.F.R. § 1575. There are three possible tests. 20 C.F.R. § 1575(a)(2) states as follows:

> (2) General rules for evaluating your work if you are self-employed. We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. We will generally consider work that you were forced to stop or reduce to below substantial gainful

> activity after 6 months or less because of your
> impairment as an unsuccessful work attempt. . .
> We will evaluate your work activity based on the
> value of your services to the business regardless
> of whether you receive an immediate income for your
> services. We determine whether you have engaged in
> substantial gainful activity by applying three tests.
> If you have not engaged in substantial gainful activity
> under test one, then we will consider tests two and
> three. The tests are as follows:
>
> (I) Test one: You have engaged in substantial gainful
> activity if you render services that are significant
> to the operation of the business and receive a
> substantial income from the business . . . .
>
> (ii) Test Two: You have engaged in substantial gainful
> activity if your work activity, in terms of factors
> such as hours, skills, energy output, efficiency,
> duties, and responsibilities, is comparable to that
> of unimpaired individuals in your community who are
> in the same or similar businesses as their means of
> livelihood.
>
> (iii) Test Three: You have engaged in substantial
> gainful activity if your work activity, although not
> comparable to that of unimpaired individuals, is
> clearly worth the amount shown in § 404.1574(b)(2)
> when considered in terms of its value to the business,
> or when compared to the salary that an owner would
> pay to an employee to do the work you are doing.

The administrative law judge utilized and decided the question of disability under the third test. The amount for substantial gainful activity in 2009 was $980 per month and in 2010 and 2011 $1000 per month.

There are two prongs to the third test and the test can be satisfied under either prong: (1) the work activity performed by the claimant is clearly worth the substantial gainful activity amount when considered in terms of its value to the business or (2) the work activity performed by the claimant is clearly worth the substantial gainful

13

activity amount when compared to the salary that an owner would pay to an employee to do the same work. The administrative law judge found that Fahey engaged in substantial gainful activity under the first prong of the third test. In deciding the case based on the first prong the administrative law judge noted the inconsistency between Fahey's hearing testimony and his post-hearing brief and stated in pertinent part as follows:

> The undersigned finds that the claimant's value to the business is clearly worth the minimal monthly substantial gainful activity amounts, satisfying the third test of a self-employed individual who is engaging in substantial gainful activity. The claimant's representative argues that this is not the case, without a specific explanation why. According to his brief, the claimant's wife performs cooking, bar services, and sees to the overall function of the bar, with his daughter also working as a bartender. The claimant's only activities are opening the business prior to 6:00 p.m., placing cash in the register, and returning before closing only if there is an unaccompanied female bartender. If his energy level is up to it, he sometimes remains for a short period to greet customers, check inventory, and order beverages. . .
>
> The claimant's testimony at the hearing does not support such limited activities. The claimant testified he is the manager of the bar and makes the decisions, and he tells people what he wants done. He does the hiring and firing. If the bar is short on bottles, he goes to the liquor store. He orders beer. Despite his representative's brief stating that his wife sees to the overall functions of the bar, the claimant's testimony made no mention of her working there or doing anything beyond working for the Social Security Administration. His testimony made no mention of him only closing the bar if unaccompanied female workers are there. He testified that he normally closes the bar . . . Significantly, the claimant's testimony at the hearing made no mention that he also owns the property that the bar is on under another LLC, paying rent from one of his partnerships to the other. The undersigned was unable to question him about what he does for his second business because he remained silent about this business at the hearing.
>
> The testimony of the claimant regarding his work activity shows that, since his alleged onset date of disability, the claimant has participated in the operation of his bar. The claimant is responsible for all management decisions regarding his bar even though he may not always be there, including handling the cash, hiring, and inventory. These numerous services clearly have a large value to the bar, as what business can function without someone running it, which the claimant testified he does?

> Someone responsible for running a business like a bar would earn at least $1000 a month, the minimum threshold for substantial gainful activity.

Tr. 23-24.  The administrative law judge went on to find at step one that there has been no continuous 12-month period during which Fahey had not engaged in substantial gainful activity and concluded that Fahey was not disabled as defined in the Social Security Act since November 27, 2009. Tr. 24.

The issue is whether the administrative law judge's step one analysis is supported by substantial evidence.  More specifically, is there substantial evidence demonstrating that Fahey's work activity, when considered in terms of its value to the bar, was <u>clearly</u> worth $1000 per month (or $250 per week)?  As stated earlier, substantial evidence is not a large or considerable amount of evidence but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It has been described as more than a mere scintilla of evidence but less than a preponderance and it may be something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

No business manager or expert in the management of a bar testified or provided an opinion regarding the value of the duties performed by Fahey.  The administrative law judge found based on Fahey's hearing testimony that he was more involved in the business than his representative's post-hearing submission suggested. The administrative law judge did not specify how many hours Fahey worked at the bar and merely speculated that his "numerous services clearly have a large value to the bar, as what business can function without someone running it."  A material fact, such as the value of Fahey's services, need not be proved by direct evidence. However, there must

15

be evidence from which the value of those services can be properly inferred and an inference of the value cannot be based on speculation, guess or imagination. There are no facts in the record from which the administrative law judge could reasonably infer that Fahey's services were clearly worth $1000 per month. The administrative law judge merely draws adverse inferences from what he perceives to be inconsistencies between Fahey's testimony and the post-hearing submission submitted by his attorney and the fact that Fahey did not mention that building in which the bar was located was owned by another limited liability company in which he was involved. Although these inconsistencies may be a basis to conclude that Fahey worked more than 10 hours per week. They are not a basis to conclude that the value of Fahey's services was clearly $1000 per month.

Under the circumstances, the court concludes that the administrative law judge's step one analysis is based on mere speculation and not supported by substantial evidence. Consequently, the court will remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.

_____
Robert D. Mariani
United States District Judge

Date: November 18, 2014